**Rel: 09/26/2014**

**Notice:** This opinion is subject to formal revision before publication in the advance sheets of **Southern Reporter**.  Readers are requested to notify the **Reporter of Decisions**, Alabama Appellate Courts, 300 Dexter Avenue, Montgomery, Alabama 36104-3741 ((334) 229-0649), of any typographical or other errors, in order that corrections may be made before the opinion is printed in **Southern Reporter**.

# SUPREME COURT OF ALABAMA

## SPECIAL TERM, 2014

————————————

### 1130393

————————————

**Ex parte Alabama Rivers Alliance and Friends of Hurricane Creek**

PETITION FOR WRIT OF CERTIORARI
TO THE COURT OF CIVIL APPEALS

(In re: Tuscaloosa Resources, Inc.

v.

Alabama Department of Environmental Management et al.)

(Tuscaloosa Circuit Court, CV-10-900300;
Court of Civil Appeals, 2120482)

PARKER, Justice.

1130393

Alabama Rivers Alliance and Friends of Hurricane Creek (hereinafter collectively referred to as "ARA") petitioned this Court for a writ of certiorari to review the Court of Civil Appeals' decision reversing a judgment of the Tuscaloosa Circuit Court ("the trial court") dismissing an appeal by Tuscaloosa Resources, Inc. ("TRI"), of a decision of the Environmental Management Commission ("the Commission"). See Tuscaloosa Res., Inc. v. Alabama Dep't of Envtl. Mgmt., [Ms. 2120482, October 4, 2013] ___ So. 3d ___ (Ala. Civ. App. 2013). The Alabama Department of Environmental Management ("ADEM") oversees the Commission. We granted certiorari review to consider whether the Court of Civil Appeals' decision conflicts with this Court's decision in Price v. South Central Bell, 294 Ala. 144, 313 So. 2d 184 (1975), and the Court of Civil Appeals' decision in Personnel Board of Jefferson County v. Bailey, 475 So. 2d 863 (Ala. Civ. App. 1985). See Rule 39(a)(1)(D), Ala. R. App. P. For the following reasons, we conclude that the Court of Civil Appeals' decision in this case does conflict with Price and Bailey, and we reverse its judgment.

Facts and Procedural History

2

1130393

In <u>Tuscaloosa Resources</u>, the Court of Civil Appeals set

forth the relevant facts and procedural history, as follows:

"TRI sought a water-pollution permit from ADEM. The Alabama Rivers Alliance and Friends of Hurricane Creek (hereinafter referred to collectively as 'ARA') challenged the issuance of the permit through ADEM's administrative-appeals process. One of the grounds TRI asserted in its defense of the issuance of the permit was whether ARA had standing to contest the permit. At the evidentiary hearing of the matter, TRI presented evidence regarding the standing issue. After the hearing, the hearing officer submitted his recommendations to the Commission. In turn, the Commission entered an order adopting the hearing officer's recommendation, which, among other things, concluded that ARA did have standing to contest the permit, and it upheld the issuance of the permit to TRI.

"TRI appealed the Commission's order to the trial court.[1] The trial court noted that, by

---

[1]As set forth below, ARA subsequently filed an appeal in the Montgomery Circuit Court. Section 41-22-20(b), Ala. Code 1975, allows an aggrieved party to seek judicial review "either in the Circuit Court of Montgomery County or in the circuit court of the county in which the agency maintains its headquarters, or unless otherwise specifically provided by statute, in the circuit court of the county where a party other than an intervenor, resides or if a party, other than an intervenor, is a corporation, domestic or foreign, having a registered office or business office in this state, then in the county of the registered office or principal place of business within this state." TRI does not indicate in its brief before this Court why it believes that the Tuscaloosa Circuit Court was the appropriate venue for its appeal. In its motion to transfer ARA's appeal from the Montgomery Circuit Court, TRI indicated that venue was appropriate in the Tuscaloosa Circuit Court because ARA "perform[s] in Tuscaloosa County business functions for which [it was] created."

3

statute, only aggrieved parties can appeal a decision of the Commission to the circuit court and found that TRI was not a 'person aggrieved by the administrative action' of the Commission. Therefore, the trial court held, it did not have subject-matter jurisdiction over the appeal, and it dismissed TRI's appeal."

___ So. 3d at ___.

## Standard of Review

This case concerns TRI's standing to appeal the Commission's final decision in TRI's favor. The facts related to TRI's standing to appeal the decision are not in dispute; thus, only a question of law is presented for our review. This Court reviews questions of law de novo. National Ins. Ass'n v. Sockwell, 829 So. 2d 111 (Ala. 2002); Moss v. Williams, 822 So. 2d 392 (Ala. 2001); and Reed v. Board of Trs. of Alabama State Univ., 778 So. 2d 791 (Ala. 2000). See also New L&N Sales & Marketing, Inc. v. Revson, 29 Fed. App'x 582, 582 (Fed. Cir. 2002)(not selected for publication in the Federal Reporter)("Whether a party has standing to appeal is a question of law that we review de novo."); Garrison v. Garrison, 8 So. 3d 904, 906 (Miss. Ct. App. 2009)("Whether a party has standing to appeal a trial court's judgment is a question of law, which is reviewed de novo."); and Anderson v.

Access Med. Ctrs., 263 P.3d 328, 330 (Okla. Civ. App. 2011)("'Whether a party lacks standing to appeal is a question of law, which this Court reviews de novo ....'" (quoting In re Baby W., 220 P.3d 32, 32 (Okla. Civ. App. 2009))).

Discussion

In Tuscaloosa Resources, the main opinion set forth the law the Court of Civil Appeals applied, as follows:

"This case does not involve issues related to the Commission's procedures when hearing the appeal of an action taken by ADEM, see § 22-22A-7, Ala. Code 1975; therefore, our review of this case is governed by the Alabama Administrative Procedure Act ('AAPA'), § 41-22-20, Ala. Code 1975. See Alabama Dep't of Envtl. Mgmt. v. Legal Envtl. Assistance Found., Inc., 973 So. 2d 369, 375 n. 3 (Ala. Civ. App. 2007) (quoting Plumbers & Steamfitters, Local 52 v. Alabama Dep't of Envtl. Mgmt., 647 So. 2d 793, 794-95 (Ala. Civ. App. 1994) ('"because [the case] concerns a matter unrelated to the perfecting of an appeal, judicial review of a decision of the Commission is governed by §§ 41-22-20 and -21"')).

"Section 41-22-20 provides, in pertinent part:

"'(a) A person who has exhausted all administrative remedies available within the agency, other than rehearing, and who is aggrieved by a final decision in a contested case is entitled to judicial review under this chapter.'

"(Emphasis added.)

"Black's Law Dictionary 1232 (9th ed. 2009) defines an 'aggrieved party' as '[a] party entitled

to a remedy; esp., a party whose personal, pecuniary, or property rights have been adversely affected by another person's actions or by a court's decree or judgment.' In Alabama Department of Environmental Management v. Friends of Hurricane Creek, 114 So. 3d 47, 51 (Ala. Civ. App. 2012), this court discussed what constituted an 'aggrieved' person under the AAPA.

"'We start with the proposition that, for a person to demonstrate standing to seek relief in the courts of Alabama, that person must show "'(1) an actual concrete and particularized "injury in fact" —- "an invasion of a legally protected interest"; (2) a "causal connection between the injury and the conduct complained of"; and (3) a likelihood that the injury will be "redressed by a favorable decision."'" Ex parte HealthSouth Corp., 974 So. 2d 288, 293 (Ala. 2007) (quoting Stiff v. Alabama Alcoholic Beverage Control Bd., 878 So. 2d 1138, 1141 (Ala. 2003), quoting in turn Lujan v. Defenders of Wildlife, 504 U.S. 555, 560–61, 112 S. Ct. 2130, 119 L. Ed. 2d 351 (1992)). Those elements of an actual or imminent injury, causation, and redressability, which have their origins in the "case or controversy" interpretive jurisprudence pertaining to Article III of the United States Constitution, amount to constitutional minima, at least as to the judicial branch. See Hollywood Mobile Estates, Ltd. v. Seminole Tribe of Florida, 641 F.3d 1259, 1265 (11th Cir. 2011); see also Pharmacia Corp. v. Suggs, 932 So. 2d 95, 97 n. 4 (Ala. [2005]) (indicating that Section 139 of the Alabama Constitution of 1901 similarly empowers this state's judiciary to "'decide discrete cases and controversies involving particular parties and specific facts'" rather than answering

6

1130393

abstract questions) (quoting <u>Alabama Power Co. v. Citizens of Alabama</u>, 740 So. 2d 371, 381 (Ala. 1999)); <u>but see</u> <u>Climax Molybdenum Co. v. Secretary of Labor</u>, 703 F.2d 447, 451 (10th Cir. 1983) (indicating that administrative agencies are not bound by constitutional "case or controversy" requirements).'"

___ So. 3d at ___.

After setting forth the above law, the Court of Civil Appeals proceeded to analyze <u>Bailey</u>, supra:

"In <u>Bailey</u>, a deputy sheriff filed a grievance with the Jefferson County Personnel Board ('the Board') complaining that Sheriff Bailey had improperly transferred him from patrol duty to jail duty. The Board found that the deputy sheriff's complaint was 'grievable' and then, after a hearing on the merits, entered a decision reinstating the deputy sheriff to the patrol division. 475 So. 2d at 865. Sheriff Bailey appealed the decision to the circuit court, seeking a judgment declaring that matters of job assignment were within the prerogative of the sheriff and not subject to review by the Board. The circuit court determined that the deputy sheriff's complaint was a matter properly considered by the Board but also held that the Board's reinstatement of the deputy sheriff to patrol duty was arbitrary and capricious. The deputy sheriff appealed to this court, and Sheriff Bailey cross-appealed. <u>Id.</u>

"The deputy sheriff asserted that, because Sheriff Bailey had prevailed, he did not have standing to cross-appeal. However, this court concluded that, because the circuit court's decision 'could have a prejudicial effect on [Sheriff Bailey's] authority to assign and discipline subordinates in his department,' he had the right to

7

1130393

cross-appeal the finding that the complaint was
'grievable.' Id. at 866."

Tuscaloosa Resources, ___ So. 3d at ___.

Based on its analysis of Bailey, the Court of Civil

Appeals then stated:

"We find the rationale set forth in Bailey to be
applicable in this case. TRI sought a ruling that
ARA did not have standing to challenge the water-
pollution permit that ADEM had issued. It argues
that, in holding that ARA had standing, the
Commission's ruling subjects TRI to additional
litigation, that is, TRI now must take on the
expense and risk required to defend ARA's appeal of
the Commission's decision in the Montgomery Circuit
Court. However, if the trial court in the
underlying appeal reverses the Commission's ruling
on the issue of ARA's standing, TRI would not be
required to address the merits of the issuance of
the permit. Furthermore, we agree with TRI that the
Commission's ruling weakens procedural protections
against challenges to any permits TRI might require
for future operations. Therefore, we conclude that
TRI has demonstrated that it was aggrieved by the
Commission's decision that ARA had standing to
challenge the permit."

Tuscaloosa Resources, ___ So. 3d at ___. Accordingly, the

Court of Civil Appeals held that the trial court had erred in

dismissing TRI's appeal.

In its petition for certiorari review, ARA alleges that

the main opinion in Tuscaloosa Resources conflicts with Price,

supra, and Bailey, supra. Specifically, ARA alleges that the

8

conclusion in Tuscaloosa Resources that TRI had standing to appeal the Commission's decision to the trial court because TRI was aggrieved by the Commission's decision that ARA had standing to challenge TRI's application for a water-pollution permit, even though TRI received all the relief it requested from the Commission (TRI's water-pollution permit was granted, even though the Commission determined that ARA had standing to challenge TRI's application), conflicts with Price and Bailey. We granted certiorari review to address this issue.

For the reasons set forth in Judge Moore's dissent in Tuscaloosa Resources, which is similar to the reasoning set forth by ARA in its brief before this Court, we hold that the Court of Civil Appeals' opinion in Tuscaloosa Resources conflicts with Bailey and Price, and, thus, the Court of Civil Appeals' judgment must be reversed. Judge Moore's convincing dissent states, in pertinent part:

> "The main opinion, citing Personnel Board of Jefferson County v. Bailey, 475 So. 2d 863 (Ala. Civ. App. 1985), adopts TRI's assertions that the Commission's ruling subjects TRI to additional litigation because 'TRI now must take on the expense and risk required to defend ARA's appeal of the Commission's decision in the Montgomery Circuit Court.' ___ So. 3d at ___. The main opinion further observes that, 'if the trial court in the underlying appeal reverses the Commission's ruling

9

on the issue of ARA's standing, TRI would not be required to address the merits of the issuance of the permit.' ___ So. 3d at ___.

"Although the main opinion relies on Bailey, I find the circumstances in Bailey to be distinguishable from those in the present case. In Bailey, a deputy sheriff filed a grievance with the Jefferson County Personnel Board ('the Board'), asserting that the sheriff had transferred him from patrol duty to jail duty in the sheriff's department for disciplinary reasons. 475 So. 2d at 865. The Board determined that the deputy sheriff's complaint was 'grievable,' proceeded to hear the merits of the complaint, and ultimately ruled in the deputy sheriff's favor, ordering that he be reinstated to the patrol division. Id. The sheriff then filed a complaint in the circuit court, seeking a judgment declaring that matters of job assignment, placement, and transfer are prerogatives of the sheriff and, thus, not subject to review by the Board and that the Board's decision was erroneous. Id. The circuit court ultimately entered a final judgment ruling that the Board's decision was arbitrary and capricious; the deputy sheriff and the Board appealed from that portion of the circuit court's order. Id. The circuit court had previously entered a partial summary judgment, finding that the deputy sheriff's complaint had been properly before the Board for its consideration; the sheriff cross-appealed from that portion of the judgment. Id.

"In determining that, although the sheriff was the prevailing party below, the sheriff had the right to cross-appeal the circuit court's finding on the grievability issue, this court observed that 'the court's decision could have a prejudicial effect on [the sheriff's] authority to assign and discipline subordinates in his department.' Id. at 866. This court considered the case of Price v. South Central Bell, 294 Ala. 144, 313 So. 2d 184 (1975), in reaching its conclusion as to that matter

10

in Bailey.[1]  In Price, the prevailing party below and the appellee before the Alabama Supreme Court attempted to circumvent the decision reached on the merits in its favor in the circuit court and to avoid a potentially unfavorable decision on appeal by arguing that the action should have been dismissed because the appellant had failed to prosecute the action in the name of the real party in interest.  294 Ala. at 150, 313 So. 2d at 189. The Alabama Supreme Court explained that '[i]f an appellee wishes to have rulings of the trial court adverse to it reviewed, an appellee must either take a cross-appeal or cross-assign errors upon the record brought up by appellant.'  Id.

"This court determined in Bailey that the sheriff merely had the right to cross-appeal, not to initiate an independent appeal on the grievability issue.  The main opinion in the present case improperly expands that determination to allow for an independent appeal for appellants who are the prevailing parties in the circuit court.  The reliance on Price by this court in Bailey supports the assertion that the sheriff in Bailey, and TRI in the present case, would not have standing to bring an independent appeal because they were the prevailing party in the lower court.

"In Hollywood Mobile Estates, Ltd. v. Seminole Tribe of Florida, 641 F.3d 1259, 1265 (11th Cir. 2011), cited in Alabama Department of Environmental Management v. Friends of Hurricane Creek, [114 So. 3d 47 (Ala. Civ. App. 2012)], ... the Eleventh Circuit Court of Appeals observed:

"'"'[W]e should not speculate concerning the existence of standing'" because we "'lack[] the power to create jurisdiction by embellishing a deficient allegation of injury.'" DiMaio v. Democratic Nat'l Comm., 520 F.3d 1299, 1301 (11th Cir. 2008)

11

(quoting Elend v. Basham, 471 F.3d 1199, 1206 (11th Cir. 2006)).'

"TRI filed the present appeal to this court on April 26, 2010. ARA filed an appeal of the Commission's decision to the Montgomery Circuit Court on May 26, 2010. Thus, at the time TRI filed its appeal, no appeal by ARA of the Commission's decision in favor of TRI was pending. As a result, any purported damage to TRI as a result of its potentially being required to defend an appeal by ARA was only speculative, not concrete, at the time TRI filed its appeal. In accordance with the instruction of Hollywood Mobile Estates, it would be error to speculate so as to bestow TRI with standing to appeal in this case.[2]

"With regard to TRI's argument, and the main opinion's agreement therewith, that, had the Commission determined that ARA did not have standing, TRI would not have been required to undergo further litigation and incur expenses in addressing the merits of the issuance of the permit, ___ So. 3d at ___, I note that, under such circumstances, ARA could appeal the Commission's decision that it did not have standing, causing TRI to undergo further litigation, including costs and time. TRI's argument is circular; to accept its argument as the main opinion has done would allow any prevailing party to claim as damage the possibility of additional time and expense in defending an appeal and/or further litigation by the opposing party in any action. Indeed, had the Commission determined that ARA did not have standing, TRI might have been required to take on the additional time and expense of defending an appeal of that decision by ARA as well. Accordingly, TRI does not have standing to independently appeal a decision wholly in its favor.

"The main opinion also agrees with TRI 'that the Commission's ruling weakens procedural protections

12

against challenges to any permits TRI might require for future operations.' ___ So. 3d at ___. Again, the only support for that statement is grounded in <u>Bailey</u>, which I have distinguished above. TRI offered no further citation to authority in support of that assertion. ...

"Because I believe the main opinion improperly allows TRI to bring an independent appeal, misconstruing <u>Bailey</u>, and because I believe TRI, as a prevailing party below does not have standing to bring this appeal, I would dismiss TRI's appeal.

"_____

"[1]This court also cited <u>Katz v. Red Top Sedan Service, Inc.</u>, 136 So. 2d 11 (Fla. Dist. Ct. App. 1962). In that case, however, the appellants had been successful in the circuit court, but assigned errors based on their assertion that the damages awarded had been too minimal. <u>Id.</u> Thus, the decision in that case has no bearing on the considerations at issue in the present case.

"[2]<u>See also</u> <u>ACS Enters., Inc. v. Norristown Borough Zoning Hearing Bd.</u>, 659 A.2d 651, 654 (Pa. Cmwlth. Ct. 1995) ('[A] prevailing party's disagreement with the legal reasoning or basis for a decision does not amount to a cognizable aggrievement necessary to establish standing. ... [T]he mere possibility of future litigation does not satisfy the requirement that to be considered an aggrieved party, the party's interest must be immediately affected by a decision.')."

<u>Tuscaloosa Resources</u>, ___ So. 3d at ___ (Moore, J., dissenting). Judge Moore properly concluded that TRI did not have standing to file an independent appeal from the judgment entered in TRI's favor.

1130393

<u>Conclusion</u>

Based on the foregoing, the judgment of the Court of Civil Appeals is reversed and the case remanded to that court for proceedings consistent with this opinion.

REVERSED AND REMANDED.

Stuart, Bolin, Main, Wise, and Bryan, JJ., concur.

Moore, C.J., and Murdock and Shaw, JJ., concur in the result.

1130393

MURDOCK, Justice (concurring in the result).

I agree with Judge Moore's, and therefore the main opinion's, understanding of Personnel Board of Jefferson County v. Bailey, 475 So. 2d 863 (Ala. Civ. App. 1985), and why it fails to support the proposition that a prevailing party in a case can file an appeal independent of an appeal by the losing party.[2] I am concerned, however, by the manner in which Judge Moore and this Court in the main opinion both use "standing" terminology to refer to an aggrieved party's right to appeal. I believe this moniker presents the potential for

_____

[2]I would stop short of the notion expressed in Justice Shaw's special writing that, even in the absence of an appeal by the deputy sheriff of the circuit court's ultimate decision that he was not entitled to reinstatement, there was "nothing preventing Sheriff Bailey from filing an independent appeal from the adverse judgment against him in the declaratory-judgment action" regarding the proper role of the Jefferson Personnel Board. ___ So. 3d at ___ (Shaw, J., concurring in the result). I believe it fairly could be questioned whether, had the deputy acquiesced in the circuit court's decision reversing the personnel board's action on its merits, there would have continued to be a present and actual controversy of the nature contemplated by the Declaratory Judgment Act, § 6-6-220 et seq., Ala. Code 1975, or the requirement of an ongoing "case or controversy" under Art. VI, § 139, Alabama Constitution 1901, for the continuation of an appeal. See Ex parte Valloze, 142 So. 3d 504, 508 and n.2 (Ala. 2013). See also Harper v. Brown, Stagner, Richardson, Inc., 873 So. 2d 220, 223 (Ala. 2003) ("For a declaratory-judgment action to withstand a motion to dismiss there must be a bona fide justiciable controversy that should be settled.").

15

1130393

confusion with the concept of, and the prerequisites for, the "standing" to sue that so often has drawn the attention of this Court in recent years.

Indeed, this potential appears to be realized to some extent even in Judge Moore's dissenting opinion. In a portion of Judge Moore's dissent quoted by the main opinion, he states that "'any purported damage to [Tuscaloosa Resources, Inc. ("TRI"),] as a result of its potentially being required to defend an appeal by [Alabama Rivers Alliance and Friends of Hurricane Creek (collectively "ARA")] was only speculative, not concrete, at the time TRI filed its appeal.'" ___ So. 3d at ___ (quoting Tuscaloosa Res., Inc. v. Alabama Dep't of Envtl. Mgmt., [Ms. 2120432, Oct. 4, 2013] ___ So. 3d ___, ___ (Ala. Civ. App. 2013) (Moore, J., dissenting)). This statement implies that, but for the timing of things (the fact that ARA had not yet filed its own appeal when TRI attempted to file its appeal), the litigation costs and time that TRI would incur in defending an appeal by ARA should be considered a form of "injury" that would be relevant to a "standing"-to-appeal analysis. I find this implication to be contrary to the view embodied in the next paragraph of Judge Moore's

16

1130393

writing (with which I fully agree) that the time and expense of defending an appeal brought by an opposing party is not the type of injury that informs a "standing" analysis. <u>Tuscaloosa Resources</u>, ___ So. 3d at ___ (Moore, J., dissenting). <u>Standing is a concept concerned with substantive rights and injuries, not appellate-litigation time and costs.</u>

The "standing" commonly addressed by this Court is a concept that speaks to whether a litigant has the requisite personal, concrete interest to invoke the aid of the courts in the first place, i.e., to file a complaint commencing an action. TRI, or a litigant in its position, does not lose whatever personal, concrete interest it had at the outset of the litigation merely by virtue of prevailing in the initial adjudication of the dispute in a lower court or other tribunal; until such time as the adjudication of the dispute is at an end by virtue of the exhaustion of, or lack of proper invocation of, the appellate process, such a party has as much of an interest in relation to the dispute as it always had (and even then has what we normally think of as "standing" to seek enforcement of the judgment in its favor).

17

1130393

Although they may be somewhat analogous, the restraining principle at issue here and the issue of "standing" are two different things. See generally Joan Steinman, Shining a Light in a Dim Corner: Standing to Appeal and the Right to Defend a Judgment in the Federal Courts, 38 Ga. L. Rev. 813 (Spring 2004); 15A Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure § 3902.1 (2d ed. 1992). The term "standing to appeal," which admittedly has been used by federal courts, is in actuality merely a way of referring to a statutorily granted "procedural right" to have some higher court conduct some further review of one's case.

> "Congress has vested appellate jurisdiction in the courts of appeals for review of final decisions of the district courts. 28 U.S.C. § 1291. Ordinarily, only a party aggrieved by a judgment or order of a district court may exercise the statutory right to appeal therefrom. A party who receives all that he has sought generally is not aggrieved by the judgment affording the relief and cannot appeal from it. Public Service Comm'n v. Brashear Freight Lines, Inc., 306 U.S. 204 (1939); New York Telephone Co. v. Maltbie, 291 U.S. 645 (1934); Corning v. Troy Iron & Nail Factory, 15 How. 451 (1854); 9 J. Moore, Federal Practice ¶ 203.06 (2d ed. 1975). The rule is one of federal appellate practice, however, derived from the statutes granting appellate jurisdiction and the historic practices of the appellate courts; it does not have its source in the jurisdictional limitations of Art. III[, U.S. Const.]."

18

1130393

Deposit Guar. Nat'l Bank v. Roper, 445 U.S. 326, 333-34 (1980) (emphasis added).[3]

That said, I agree with the main opinion to the extent it can be read as standing for the proposition that TRI was the prevailing party before the Commission and therefore did not have the "right" to file an appeal. Further, of course, even with the subsequent filing of an appeal by ARA, TRI had no right to "piecemeal" to some different "appellate" tribunal -- i.e., other than one to which ARA had properly appealed -- its request for consideration of an alternative ground for upholding the lower tribunal's decision (which is what ARA's alleged lack of "standing" to sue would have been in this case had it been meritorious). Nor could TRI "piecemeal" a cross-appeal (if it had a basis for one, which, unlike the sheriff in Bailey, I do not believe it does), to some "appellate" tribunal other than the one in which the losing party properly filed its appeal.

---

[3]If there is any constitutional constraint on the ability of a prevailing party to appeal in the absence of an appeal by the losing party, it might be the loss of a continuing "case or controversy" as a result of the loss of an adverse party.

19

1130393

SHAW, Justice (concurring in the result).

I am not convinced that the decision relied upon by the Court of Civil Appeals, Personnel Board of Jefferson County v. Bailey, 475 So. 2d 863 (Ala. Civ. App. 1985), supports that court's decision. Specifically, the cross-appellant in that case, Sheriff Bailey, had filed a declaratory-judgment action seeking a determination whether the appellant, the Personnel Board of Jefferson County ("the Board"), had the power to overrule his personnel decision. He also filed what was deemed as a separate common-law certiorari petition challenging the merits of the Board's holding that overruled his personnel decision.

Sheriff Bailey first received a nonfinal adverse judgment on the declaratory-judgment action and then also later received a favorable judgment on the certiorari petition. The Board appealed from the judgment against it on the certiorari petition, and Sheriff Bailey cross-appealed from the adverse judgment against him on the declaratory-judgment action. Even if the Board had filed no appeal, I see nothing preventing Sheriff Bailey from filing an independent appeal from the adverse judgment against him in the declaratory-judgment

20

action. The analysis in Bailey, which focused on whether Sheriff Bailey could appeal from a favorable judgment, was misplaced--he was not appealing the favorable judgment on the certiorari petition. I see no support in Bailey for the Court of Civil Appeals' decision in the instant case on the issue whether a party may appeal from a favorable judgment.

Both the Court of Civil Appeals' decision in the instant case, as well as Judge Moore's dissenting opinion, which is quoted at length in the main opinion, rely on the test for standing found in Lujan v. Defenders of Wildlife, 504 U.S. 555 (1992). In my dissenting opinion in Ex parte Alabama Educational Television Commission, [Ms. 1111494, Sept. 27, 2013] ___ So. 3d ___ (Ala. 2003), I rejected the application of Lujan in situations other than general constitutional challenges, especially when the legislature provides a cause of action and subject-matter jurisdiction by statute.

This case does not present a general constitutional challenge. Further, the legislature, in Ala. Code 1975, § 41-22-20(a), has provided Tuscaloosa Resources, Inc., with the right to appeal to the trial court when it is "aggrieved" by a decision of the Environmental Management Commission ("the

1130393

Commission"). I agree with the portion of Judge Moore's dissent, quoted in the main opinion, demonstrating that any "purported damage" to TRI by the Commission's decision is only speculative and based on conjecture. I thus do not believe that TRI was "aggrieved" by the Commission's decision for purposes of § 41-22-20(a).

22